IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01001-LTB-KMT

MICHAEL SCHWARTZ and PATTI SCHWARTZ,

Plaintiffs,

v.

HEATHER MORRISON, ALEXANDER MORRISON, and ROBERTA MORRISON,

Defendants.

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO STRIKE J. QUINN CAMPBELL, M.S. AND JASON R. SKIERA, M.S., P.E.

Defendants, Heather Morrison, Alexander Morrison, and Roberta Morrison, through their counsel, Joshua R. Proctor of LEVY•WHEELER•WATERS, P.C., hereby file this Response to Plaintiffs' Motion to Strike J. Quinn Campbell, M.S. and Jason R. Skiera, M.S., P.E., and state as follows:

### I.   Introduction

Plaintiff Michael Schwartz claims he was injured as a result of a low-speed motor vehicle accident on March 11, 2009, when Defendant Heather Morrison's Volkswagen Jetta bumped into the rear of Mr. Schwartz's Mercedes S500 sedan. Prior to the accident, Mr. Schwartz had undergone multiple spinal surgeries related to a long-standing degenerative spine condition, and had ongoing medical treatment for spine pain, including an injection to his lower back only two days before the accident.

Defendants retained experts in the fields of accident reconstruction (Jason Skiera) and biomechanics (Quinn Campbell) to evaluate the nature and severity of the

collision and the presence or absence of sufficient biomechanical forces to cause Mr. Schwartz's alleged injuries. Plaintiffs moved to strike the testimony of Defendants' experts under Fed.R.Evid. 702, claiming that their opinions are irrelevant and unreliable.

An examination of the opinions of Mr. Skiera and Mr. Campbell shows that they are reliable, helpful to the trier of fact, and relevant to the primary jury question in this case: whether the minor car accident caused the injuries plaintiff claims he sustained. Plaintiffs' motion to strike must be denied.

## II. Argument and Authorities

### A. Standard of Review

Under Fed.R.Evid. 702, the Court acts as a gatekeeper with regard to the admissibility of expert opinions. *Gallegos v. Swift & Co.*, 237 F.R.D. 633, 638 (D.Colo. 2006), citing *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir.2001). The Court must determine whether a proffered witness is qualified, whether the subject testimony is reliable, and whether it is relevant to the issue at hand. See Fed.R.Evid. 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-593, (1993). This analysis applies to technical as well as to scientific testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Determination of the admissibility of expert opinion testimony is not subject to rigid criteria, and is case specific, granting the Court "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. *Id.* at 152. Here, as the proponent of the evidence, the Defendants bear the burden of establishing that their experts' testimony is admissible. *Gallegos*, 237 F.R.D. at 639, citing *Ralston*, 275 F.3d at 970 n. 4.

2

### B. Qualifications of Mr. Skiera and Mr. Campbell

An expert's qualifications is analyzed by "comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness' testimony." *Gallegos*, 237 F.R.D. at 639, *citing Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir.1990). It does not appear that Plaintiffs are challenging the qualifications of Mr. Skiera or Mr. Campbell in this case.

### C. Reliability of Defendants' Proffered Expert Testimony

To be admissible, a qualified expert witness' testimony must be "based upon sufficient facts or data," "the product of reliable principles and methods," and the expert must apply these principles and methods "reliably to the facts of the case." *Gallegos*, 237 F.R.D. at 639, *citing* Fed.R.Evid. 702. Admissible expert testimony must be grounded in "the methods and procedures of science rather than subjective belief or unsupported speculation." *Gallegos*, 237 F.R.D. at 639, *citing Hollander v. Sandoz Pharmaceuticals Corp.*, 289 F.3d 1193, 1205 (10th Cir.2002). The proponent "need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community. Instead, the [party] must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Gallegos*, 237 F.R.D. at 639, *citing Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 781 (10th Cir.1999).

#### 1. Mr. Skiera's Expert Testimony is Reliable

Plaintiffs contend that the testimony of Defendants' accident reconstruction expert, Mr. Skiera, is unreliable, because his "opinions are based solely on photographs

3

of the collision which he compared to crash test studies for crashes dissimilar to" the subject accident and because he never "saw or examined the vehicles after the subject collision." Plaintiffs' Motion (Doc. 43), pp. 2, 3.  Plaintiffs' first contention is not only disproved by a plain reading of Mr. Skiera's report regarding the data upon which his opinion is based but also by the next page of Plaintiffs' Motion, which states that Mr. Skiera's opinion is based "on the accident report, interrogatories and depositions, repair estimates ... medical reports and photographs." Plaintiffs' Motion, p. 3; *see also* Exhibit A to Plaintiff's Motion, Mr. Skiera's report, pp. 1-2 (itemizing the materials reviewed by Mr. Skiera).  Mr. Skiera's examination of photographs in forming, in part, the basis of his opinion in this case enhances the reliability of his opinion because some of the photographs showed the vehicles as they were disassembled for repair.  *See* Exhibit A of Plaintiffs' Motion, p. 3.  This allowed Mr. Skiera to evaluate the damage (or the lack thereof) to the frame and underbody portions of the vehicles, which is data that accident reconstruction experts do not often have the benefit of reviewing.

Next, there is no requirement that an accident reconstruction expert personally physically inspect the vehicles involved in an accident in order to render an admissible opinion.  As noted above, the pertinent inquiry is whether Mr. Skiera's opinion is 1) based upon sufficient facts or data; 2) the product of reliable principles and methods; and 3) whether such principles and methods are applied reliably to the facts of the case.

In *Dolan v. Mitchell*, a Colorado Supreme Court case, the opinions of an accident reconstruction expert which were based upon witness testimony and photographs of the accident scene and vehicles were deemed admissible even though the expert had not personally examined the vehicles or the accident scene.  502 P.2d 72, 367-369. (Colo.

1972). The Colorado Supreme Court looked to a Supreme Court of Illinois case involving a similar issue and considered the following for its reasoning:

> [I]t would have been ideal if the picture taking and the expert's examination could have been at the scene immediately following the accident. However, the question is whether the truck when photographed was in substantially the same condition as it was following the collision. The evidence that the removal from the scene of the accident did not inflict damage and that the photograph accurately portrayed the damage prior to such removal was sufficient to make the pictures admissible. Hence, the photographs were proper subjects to be used by the expert in his reconstruction testimony.

*Id.* at 368-69, *citing Miller v. Pillsbury Co.*, 211 N.E.2d 733 (Ill. 1965). In an unpublished decision, Magistrate Judge Watanabe reached a similar conclusion in *Searcy v. Hamburger*, Civil Action No. 02-Z-2260 (MJW), 2004 WL 5503777 *1 (D. Colo. Jan. 21, 2004). In *Searcy*, the plaintiff argued that the defendant's accident reconstruction expert testimony was unreliable because the expert did not physically examine the vehicles. The Court ruled that this "does not give rise to striking or excluding [the expert's] testimony at trial." *Id.* The Court reasoned that the expert's opinion, which was based upon the "physical facts" of the accident, would assist the jury in understanding the defendant's theory of the case, including the minimal forces involved in the accident, which was relevant to a disputed issue in the case. *Id.*

Here, Mr. Skiera's opinion is based upon his review of numerous materials, as outlined directly in his report, including the traffic accident report with driver statements, written discovery responses, vehicle photographs and repair estimates, vehicle manufacturer data and specifications specific to the vehicles involved in the accident, and other industry publications. *See* Exhibit A to Plaintiffs' Motion, pp. 1-2. Such facts and data are the type reasonably relied upon by experts in the field of accident

reconstruction, and are sufficient to support the admissibility of his opinions in this case. Plaintiffs' arguments to the contrary may go to the weight, but not the admissibility, of Mr. Skiera's testimony.

Mr. Skiera employed reliable principles and methods in forming his opinions, as evidenced by a reading of his report. See Exhibit A to Plaintiffs' Motion. He compared the physical damage done to each vehicle as evidenced in vehicle photographs and repair estimates. He also compared the damage to the front end of Ms. Morrison's 2007 Volkswagen Jetta to publications from the Insurance Institute for Highway Safety (IIHS) publications regarding front bumper tests for 2005-2009 Volkswagen Jettas. He then compared the damage done to the two vehicles involved in the subject accident to the results of other comparable vehicle collision tests documented in a Society of Automotive Engineers (SAE) publication, Vehicle and Occupant Kinematics in Low-Speed Override/Underride Collisions. Despite Plaintiffs' argument that Mr. Skiera's reliance on the SAE publication is unreliable because "Mr. Skiera makes no determination that this collision was an 'Override/Underride' collision," the SAE publication distinguishes between two types of collision configurations: bumper-to-bumper and override/underride. Mr. Skiera clearly notes in his report that "[t]he damage pattern is consistent with a low-speed bumper-to-bumper impact." See Exhibit A of Plaintiffs' Motion, p. 4. Because Mr. Skiera analyzed the accident using the bumper-to-bumper configuration, there was no need to analyze the accident using an override/underride configuration.

Plaintiffs cite to an opinion published by the Illinois Court of Appeals, Whiting v. Couldtrip, 755 N.E.2d 494, for the proposition that photographs are insufficient to

6

determine "g-forces exerted" in a collision. This case, however, is entirely inapposite and distinguishable from our case because Mr. Skiera did not perform, opine on, or reach any conclusions whatsoever with regard to a "g-force analysis." See Exhibit A of Plaintiffs' Motion. Rather, Mr. Skiera completed delta-V (change in velocity) and relative closing speed analyses, which are entirely distinct from a delta-g analysis.

Likewise, Plaintiff cites to a SAE journal study regarding engineering calculations derived from vehicle photographs. See Plaintiffs' Motion to Strike, p. 6 (Doc. No. 43). However, this SAE journal is clearly inapplicable. The study asked participants to make evaluations based upon a single photograph of a single vehicle, as explained by Plaintiffs. The journal article, however, is silent as to the level of experience of the participants, the level of training of the participants, whether any of the participants were qualified in accident reconstruction, whether the participants were recent engineering graduates or whether they had years of experience, and whether any of the participants held mechanical engineering degrees or whether the participants held some other type of engineering degree, such as a chemical engineering degree. These unexplained questions could certainly explain the varying speed calculation results reached by the participants and is thus unpersuasive.

The SAE journal study cited by Plaintiffs is also inapposite because Mr. Skiera did not rely upon merely one photograph of a single vehicle when reaching his opinions. Rather, Mr. Skiera reviewed 92 different photographs of two separate vehicles. See Exhibit A of Plaintiffs' Motion to Strike, p. 2 (Doc. No. 43-1). As noted above, this included photographs of the underbody portions of the vehicles, which are typically not available for analysis. Moreover, Mr. Skiera was not limited to the parameters of an

academic study and a single photograph, but had access to a variety of other information, documentation, studies, research, analyses, etc. when formulating his opinions, unlike the participants in the SAE journal study.

### 2. Mr. Campbell's Expert Testimony is Reliable

Plaintiffs argue that the biomechanical opinions of Mr. Campbell are not reliable because they are "medical opinions." Plaintiffs' Motion, pp. 8-12. This argument is misplaced. In his report, Mr. Campbell clearly states he is not offering medical opinions, and does not opine whether Mr. Schwartz was or was not injured in the accident. Instead, Mr. Campbell offers opinions about the movement of Mr. Schwartz's body inside the vehicle during the accident, and the location (i.e. spine level) and nature of any expected movement as a result of the accident, based upon the voluminous materials he reviewed. Exhibit B to Plaintiffs' Motion. Mr. Campbell specifically states that due to Mr. Schwartz's pre-existing cervical and lumbar spine conditions, "Mr. Schwartz's outcome cannot be predicted by examining the outcomes of human volunteers in similar low-speed rear-end accidents" and that the likelihood that Mr. Schwartz experienced symptoms due to occupant kinematics is "best assessed by a qualified medical doctor." Id., p. 10.

There is a clear distinction between biomechanical causation and medical causation. Biomechanics is defined as "[t[he science concerned with the action of forces, internal and external, on the living body." See Exhibit 1, excerpts from Patrick Hannon, Ed.D & Kerry Knapp, Ph.D, Forensic Biomechanics 3 (Lawyers & Judges Publishing Company, Inc., 2006). Biomechanics is also defined as "[t]he application of the principles and techniques of mechanics to the structure, functions, and capabilities

8

of living organisms." Whereas, medicine is defined as "[t]he art of preventing, diagnosing, and treating disease" or "[t]he science and art of diagnosing, treating, curing and preventing disease, relieving pain, and improving and preserving health." *See* Exhibit 1, excerpts from Patrick Hannon, Ed.D & Kerry Knapp, Ph.D, Forensic Biomechanics 3 (Lawyers & Judges Publishing Company, Inc., 2006). A basic example to illustrate the distinction between biomechanical causation and medical causation is that when a patient goes to her doctor following a car accident, the patient informs her doctor what happened and of her symptoms. The doctor does not go to the scene of the accident to examine what happened. Rather, the doctor relies upon what they have been told by the patient regarding the injuries sustained to make a diagnosis about the cause (i.e., the pathology or disease process) of the patient's pain complaints. A biomechanical engineer looks at the surrounding circumstances of the accident, examines photographs of vehicles and other related evidence, including medical records and human subject testing, to determine the forces exerted upon the body during the accident. A biomechanical engineer does not make diagnoses. Rather, a biomechanical engineer determines the forces exerted upon the body during a collision.

Plain and simple, Mr. Campbell does not and will not offer medical opinions. His opinions are limited to biomechanics, and are based upon sufficient data, reliable and well-accepted scientific principles and sound application of such principles to the facts of this case.

By contrast, the medical opinions of Plaintiff's treating physicians are based, not on a careful, scientific evaluation of the accident itself, but instead upon Plaintiff's subject history in the clinical office setting. For example, Plaintiff's neurosurgeon who

9

performed multiple spinal surgeries on Plaintiff before the accident and implanted Plaintiff's spinal cord stimulator after the accident, is medically unable to render an opinion regarding causation of Plaintiff's injuries. He testified as follows:

> Q   In terms of his condition as it stood on January 20th, 2010, whether it was some complications from an auto accident or sort of the natural progression of his worsening spine condition, you're not in a position to -- to comment; is that fair to say?
>
> A   I think that is fair to say.

Exhibit 2, deposition of Sean Markey, M.D. 69:6-12. With respect to his knowledge of how the accident happened, Dr. Markey testified:

> Q   All right. Do you know what happened in the car accident?
>
> A   I don't.
>
> Q   Do you know what -- who -- who hit whom, and how it occurred, anything like that?
>
> A   I have no idea.
>
> Q   Okay. Do you know if it was a head-on collision, or a -- maybe a T-bone, or a rear-end, or anything like that?
>
> A   I don't.

Exhibit 2, deposition of Sean Markey, M.D., 75:24-76:7.

As Dr. Markey's testimony illustrates, the notion that the causation opinion of a treating medical doctor is inherently more reliable or helpful to the jury than the opinion of a biomechanics expert simply defies logic. The Colorado Court of Appeals noted that a jury was not required to accept the plaintiff's medical experts' assessment of plaintiff's complaints, and the jury was entitled to disbelieve plaintiff's subjective complaints or to

10

believe that plaintiff's medical condition was caused by other factors when evaluating the experts' conclusions. *Pinell v. McCrary*, 849 P.2d 848, 851-852 (Colo. App. 1992).

Plaintiffs rely on *Schultz v. Wells*, 13 P.3d 846 (Colo. App. 2000) for their position that Mr. Campbell's opinions should be precluded. In *Schultz*, the defendant attempted to present an expert to opine on the "threshold of injury" theory, which the court determined was not accepted in the engineering field. *Id.* at 851-52. The *Schultz* court held that "the threshold for probability of injury demonstrated in the test results could not be used to 'prove that a particular person was not injured or was likely not injured in this accident.'" *Id.* at 851. The Court "questioned the validity of using a series of tests designed for one purpose (designing cars) for a different purpose (assessing a threshold of applied force for injury in rear-end car accident)." *Id.* at 852.

The Schultz case, however, is entirely distinguishable from the analysis performed by Mr. Campbell in that Mr. Campbell does not use the "threshold of injury" theory for his opinions. *See* Exhibit B of Plaintiff's Motion to Strike (Doc. No. 43-2). Also, Mr. Campbell is not attempting to opine that a particular person, Mr. Schwartz, was or was not injured in the subject accident. Rather, Mr. Campbell is merely explaining the nature and location of the forces applied to Mr. Schwartz's body during the subject accident.

This Court previously examined this distinction, and the Schultz case, in an unpublished opinion, *Seely v. Archuleta*, No. 08-cv-02293-LTB-KMT, 2011 WL 3625073 (D. Colo. Aug. 17, 2011.). In *Seely*, this Court held that Plaintiffs' reliance on Schultz was not compelling, "primarily because it is not controlling." *Id.* at *6. This Court explained its reasoning as follows:

11

> In the proper context and subject to other possible objections, a statement or question concerning whether the injuries Plaintiff sustained could have resulted from a minor or low impact collision as evidenced by the amount of property damage visible in photographs of Plaintiff's vehicle could be appropriate.

This Court further distinguished *Schultz* because the court in that case "did not announce a *per se* rule against evidence of the correlation." *Id.* "Rather, the court engaged in an analysis under Rule 702 very specific to the facts of that case, facts that make the case distinguishable." *Id.* (citations omitted). Likewise, here, Plaintiffs' reliance on *Schultz* is misplaced, because Mr. Campbell's biomechanical opinions are based upon far more than vehicle photographs and evidence of damage done to the vehicles.

Biomechanical engineers may testify as to the mechanical causation of an injury. In *Burke v. TransAm Trucking, Inc.*, 617 F.Supp.2d 327, 334 (M.D.Pa. 2009), the trial court addressed this specific issue and found:

> In the context of litigation, therefore, biomechanical engineers typically are found to be qualified to render an opinion as to the forces generated in particular accident and the general types of injuries those forces may generate. *Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 305 (6th Cir.1997); *Combs v. Norfolk & W. Ry. Co.*, 256 Va. 490 at 497, 507 S.E.2d 355, 359 (1998); *Yarchak v. Trek Bicycle Corp.*, 208 F.Supp.2d 470, 501 (D.N.J.2002) (permitting biomechanical engineer to testify generally about types of injuries that may be caused by a bicycle seat). However, biomechanical engineers ordinarily are not permitted to give opinions about the "precise cause of a specific injury." *Smelser*, 105 F.3d at 305; *see also Yarchak*, 208 F.Supp.2d at 501 (admitting the general causation testimony of a biomechanical engineer and noting that the engineer did "not offer any clinical or medical opinions with respect to the specific medical cause or source of Plaintiff's [injuries]"). This is because biomechanical engineers lack the medical training necessary to identify the different tolerance levels and preexisting medical conditions of individuals, both of which "could have an effect on what injuries resulted from an accident." *Smelser*, 105 F.3d at 305.

12

*Id.* at 333. Likewise, Mr. Campbell is not making a diagnosis as to what injuries Mr. Schwartz did or did not receive. Mr. Campbell is merely identifying what likely did or did not happen as a result of the accident based upon the forces exerted.

### D.     Defendants' Proffered Expert Testimony is Relevant

To be admissible, expert testimony must also be relevant. *See Butler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2005) (*quoting Daubert*, 509 U.S. at 597.) "A trial court must look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact." *Id.* This is also characterized as the "fit" test, which requires expert testimony to be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591, 113 S.Ct. 2786.

Whether the minor, low-speed accident that is the subject of this case caused Mr. Schwartz's alleged injuries is a question the jury will have to answer at trial. As noted above, Mr. Schwartz has an extensive pre-accident history of degenerative spinal conditions, including multiple surgeries and several years of pain management procedures. The nature and severity of the vehicle collision are important factors in the jury's determination of injury causation. The nature and location of the forces exerted upon Mr. Schwartz's body during the collision are also important factors for the jury to consider. Mr. Skiera and Mr. Campbell are the only experts in this case who have evaluated these important causative factors, and their testimony is undoubtedly relevant and helpful to the trier of fact in resolving an important factual dispute at trial.

### E. Fed.R.Evid. 403 Considerations do not Render Defendants' Proffered Testimony Inadmissible.

Plaintiffs argue that Defendants' proffered expert testimony is inadmissible under Rule 403, apparently on the basis that the jury will be confused because they "will have no background in engineering" and will not be able to understand Defendants' experts' testimony. This argument is unavailing. More importantly, Plaintiffs have failed to demonstrate that the probative value of the subject opinions is "substantially outweighed" by the risk of unfair prejudice, confusing the issues, etc. The proffered expert testimony is certainly probative. It is precisely because the subject matter of the experts' testimony is beyond the ordinary knowledge of laypersons that the testimony is helpful to the jury. However, the proffered testimony is not confusing or misleading and naturally and logically relates to disputed factual issues in the case.

### III. Conclusion

As set forth above, the testimony of Defendants' accident reconstruction and biomechanical experts satisfies the standards for admissibility under Fed.R.Evid. 702. Accordingly, Defendants respectfully request the Court enter an Order DENYING Plaintiffs' Motion to Strike (Doc. No. 43).

Dated: May 24, 2013.

Respectfully submitted,

*s/ Joshua R. Proctor*
Joshua R. Proctor
LEVY•WHEELER•WATERS, P.C.
Plaza Tower One, Suite 900
6400 S. Fiddlers Green Circle, Suite 900
Greenwood Village, CO 80111
Phone: (303) 796-2900
Email: jproctor@lwwlaw.com

Attorney for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2013, I served the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO STRIKE J. QUINN CAMPBELL, M.S. AND JASON R. SKIERA, M.S., P.E.** to the following e-mail addresses:

*Steven A. Shapiro* (sshapiro@colorado-law.net, aalexander@colorado-law.net, apfeil@colorado-law.net, ceichenberger@colorado-law.net, ddoudiet@colorado-law.net, kkyser@colorado-law.net, kligrani@colorado-law.net, ktowner@colorado-law.net, mgreer@colorado-law.net, mlien@colorado-law.net, pkay@colorado-law.net, rfagler@colorado-law.net)

*Marlo J. Greer* (mgreer@colorado-law.net, aalexander@colorado-law.net, apfeil@colorado-law.net, ceichenberger@colorado-law.net, ddoudiet@colorado-law.net, kkyser@colorado-law.net, kligrani@colorado-law.net, ktowner@colorado-law.net, mlien@colorado-law.net, mwinthers@colorado-law.net, rfagler@colorado-law.net, sshapiro@colorado-law.net)

s/ Joshua R. Proctor